HOWARD S. HAFT, Plaintiff-Appellee, v. CHARTER OAK FIRE INSUR-
ANCE COMPANY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—93—2146

Opinion filed May 19, 1994.

Peterson & Ross, of Chicago (Michael P. Tone and Cecilia M. Clarke, of counsel), for appellants.

Lawrence, Kamin, Saunders & Uhlenhop, of Chicago (Howard P. Kamin, of counsel), for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

We address two questions in this appeal: whether a premium finance company was required under Illinois law in 1983 to notify an additional insured when it requested cancellation of an insurance policy, and whether a private right of action exists under that part of the Insurance Code which governs the conduct of premium finance companies. We answer yes to both questions and affirm the trial court.

In 1983, the Insurance Code required a premium finance company to notify "the insured" when it requested that a policy be cancelled. (Ill. Rev. Stat. 1983, ch. 73, par. 1065.68.) Today, the statute requires the premium finance company to notify "the named insured." 215 ILCS 5/513a11 (West 1992).

Howard Haft owned a building in Chicago. Ted Theodorarakis rented this property and operated a restaurant there. Theodorarakis' lease required him to maintain fire insurance for $50,000. Theodorarakis bought an insurance policy for $50,000 from Travelers Insurance through Charter Oak Fire Insurance Company for the period of June 29, 1984, to June 29, 1985. The policy listed Theodorarakis as a named insured. Haft was listed on the policy as an additional insured.

On September 24, 1984, Theodorarakis signed a premium finance agreement with Unigard Service Corporation. Under the agreement, Unigard, a premium finance company, paid the full premium of the insurance policy to Travelers and Theodorarakis agreed to make monthly payments to Unigard. The agreement also contained a power of attorney which authorized Unigard to act on behalf of Theodorarakis in matters relating to the policy.

In December 1984 the bank returned Theodorarakis' checks payable to Unigard for insufficient funds. Unigard sent a notice of its intent to cancel the insurance policy to Theodorarakis if he did not pay the overdue installment within 10 days. Unigard did not send notice to Haft of its intent to cancel.

Theodorarakis failed to pay within 10 days. Unigard then exercised the power of attorney and requested cancellation of the insurance policy on behalf of Theodorarakis. Unigard sent the request for cancellation to Travelers with a copy to Theodorarakis. It did not send a copy of the request to Haft. Based upon Unigard's request, Travelers cancelled the insurance policy on December 24, 1984. Travelers also returned the unearned premium to Unigard.

On June 12, 1985, a fire partially destroyed the property. Haft notified Travelers of the loss, but Travelers refused to pay him because it had cancelled the policy. Haft then filed a lawsuit against

Theodorarakis, Unigard, and Travelers. Travelers settled with Haft for $23,500. Theodorarakis settled with Haft for $5,000. Haft pursued his claim against Unigard. He based his claim on the ground that Unigard violated section 521 of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 1065.68) when it did not notify him of its intent to cancel and request to cancel the insurance policy.

Section 521 of the Insurance Code in 1983 stated:

"Cancellation of Insurance Contract Upon Default. When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this Section.

(1) Not less than 10 days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10 day period.

(2) After expiration of such 10 day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a request for cancellation, and the insurance contract shall be cancelled as if such request for cancellation had been submitted by the insured himself ***. The premium finance company shall also mail a copy of said request for cancellation to the insured at his last known address." Ill. Rev. Stat. 1983, ch. 73, par. 1065.68.

Before trial, Unigard moved for summary judgment arguing that it had no duty to notify Haft of its intent to cancel and request to cancel under section 521. The court denied Unigard's motion and ruled that Haft was an insured under section 521 and entitled to notice. Unigard then moved for judgment on the pleadings arguing that the statute did not provide a private right of action. The court denied Unigard's motion and ruled that Haft had a cause of action under section 521. On June 7, 1993, after a bench trial, the court entered judgment in favor of Haft for $22,500.

On appeal Unigard argues that the court erred in ruling that Unigard was required to notify Haft as an insured of its intent to cancel and that Haft had a private right of action under the statute.

Unigard first argues that the words "the insured" in sections 521(1) and 521(2) refer to the named insured on the premium finance agreement, not to an additional insured listed in the insurance policy.

■ There are two contracts in this case. The first is an insurance contract between insurer and insured. The second is a finance

agreement between lender and borrower. The term "the insured" has meaning in relation to the underlying policy of insurance. Where the statute reads "the insured," it refers to the insured in the insurance policy. Under Illinois law, the insured in a policy is not limited to the named insured, but applies to "anyone who is insured under the policy." (*Wasmund v. Metropolitan Sanitary District of Greater Chicago* (1985), 135 Ill. App. 3d 926, 931, 482 N.E.2d 351, 354; *Midwest Contractors Equipment Co. v. Bituminous Casualty Corp.* (1969), 112 Ill. App. 2d 134, 140, 251 N.E.2d 349, 352.) Haft was an additional insured under the insurance policy. As designated, he was entitled to notice under sections 521(1) and 521(2) as the statute was worded in 1983.

Unigard argues that this conclusion misinterprets the statute's use of the singular form "the insured," which should be read to mean only the borrower under the finance contract. Unigard ignores the Illinois Statute on Statutes, which states, "[w]ords importing the singular number may extend and be applied to several persons or things" (5 ILCS 70/1.03 (West 1992)), which is a roundabout way of expressing the general rule of law that the singular includes the plural. Black's Law Dictionary 1242 (5th ed. 1979); 810 ILCS 5/1—102 (West 1992).

Unigard also contends that Travelers, rather than Unigard, was responsible for notifying Haft under section 521(3), which states:

"(3) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be cancelled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this Section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party of whose right to notification thereof the insurer shall have had notice at the time of cancellation on or before the second business day after the day it receives the request for cancellation from the premium finance company ***." (Ill. Rev. Stat. 1983, ch. 73, par. 1065.68.)

Unigard contends that Haft is a "third party" under this section and thus the insurer was required to notify him of the cancellation.

Section 521(3) does not apply here. Unigard has not directed this court or the trial court to any statute, regulation, or contract that characterizes Haft as a mortgagee or third party. Nothing existed to provide the insurer with notice that Haft was a mortgagee or third party. The only statutory requirement imposed on the insurer is found under section 143.14 of the Insurance Code, which states that the insurer must notify the "named insured" when it cancels a policy.

(See Ill. Rev. Stat. 1983, ch. 73, par. 755.14.) The insurer was not required to notify Haft of the cancellation under the Insurance Code.

We note in support of our holding that the legislature, in 1992, replaced "the insured" with "the named insured" in those provisions governing the notice obligations of premium finance companies. (215 ILCS 5/513a11 (West 1992).) A material change in the language of an unambiguous statute creates a presumption that the amendment was intended to change the law. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.) Unigard argues that we should not extend the meaning of "the insured" to embrace an additional insured because that interpretation would place an onerous notice burden on premium finance companies. The burden existed under the statute in 1983. We make no judgment on the legislative intent of the 1992 amendment, but we note that it eliminated the burden of which Unigard complains.

We next address whether the statute grants Haft an implied private right to recover against Unigard for its failure to notify him of the intent to cancel and the request to cancel.

■ We know that article XXXII of the Insurance Code applies to premium finance companies and their obligations to their customers. (Ill. Rev. Stat. 1983, ch. 73, par. 1065.60 *et seq.*) It is silent on the subject of a private cause of action for a violation of its provisions. A private cause of action may be implied under a statute when: (1) plaintiff is a member of the class for whose benefit the statute was enacted; (2) it is consistent with the underlying purpose of the statute; (3) plaintiff's injury is one the statute was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the statute. *Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d 302, 597 N.E.2d 616; *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 574 N.E.2d 602.

One purpose of article XXXII is to protect insureds from losing coverage as a result of cancellation without notice. The article allows them 10 days of grace to make a premium payment after notice of failure to timely pay. Haft was an insured. There is no question of his insurable interest in the property. His injury was one the statute was designed to prevent. If Haft had been notified, he could have paid the premium or bought another policy and protected his rights.

Unigard contends that it is not necessary to provide Haft with a private remedy because he has a remedy against the insurer. Unigard reasons that if section 521 was violated then the policy was never cancelled and Haft must seek recovery from the insurer.

With this interpretation Unigard attempts to impose a duty on the insurer the legislature did not intend. The statute states that the insurance policy "shall not be cancelled" by the premium finance

company unless it follows certain requirements. (Ill. Rev. Stat. 1983, ch. 73, par. 1065.68.) Had the legislature intended a violation of section 521 to block cancellation of the policy, then it could have so stated. It could have used the same language of section 143.14, which requires the insurer to send notice of cancellation to the named insured. If an insurer violates this section the result is that "[n]o notice of cancellation of any policy of insurance *** *shall be effective.*" (Emphasis added.) Ill. Rev. Stat. 1983, ch. 73, par. 755.14.

■ Unigard caused the policy to be cancelled when it sent the request to cancel to the insurer. The insurer cancelled the policy, according to statutory provisions. Section 521 imposes duties on premium finance companies. We held that Unigard violated those duties. We find that a private cause of action is necessary to provide an adequate remedy for Unigard's violation of the statute.

Affirmed.

JOHNSON and THEIS, JJ., concur.