ILLINOIS INSURANCE GUARANTY FUND, Plaintiff-Appellee, v. EVANS-TON PAPER AND PAPER SHREDDING COMPANY, INC., *et al.*, Defendants-Appellants.

First District (5th Division)  No. 1—93—4121

Opinion filed April 21, 1995.

Abraham Brustein and Thomas J. Cunningham, both of Smith, Williams & Lodge, Chartered, of Chicago, for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Richard A. Buchanan, and Susan Condon, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

This case concerns the consequences of a premium finance company's cancellation of insurance allegedly in violation of the finance company's statutory duties. We hold that if the insured grants the finance company the power to cancel the insurance contract, the insurer may cancel the contract at the finance company's behest. If the finance company has violated its statutory duties by requesting cancellation of the insurance, the insured must seek reparation from the finance company and not the insurer, who has no continuing duty to insure under the cancelled contract.

On December 15, 1983, Mission National Insurance Company (Mission) issued a policy insuring Evanston Paper & Paper Shredding Company (Evanston) for three years against many risks, including the risk of loss of a building Evanston owned. Evanston obtained a loan from Afco Credit Corporation (Afco), a premium finance company, to pay the premium for the period from December 15, 1984, until December 15, 1985. The loan agreement states that Evanston "irrevocably appoints Afco its Attorney-In-Fact with full authority to cancel the insurance policies."

On September 19, 1985, Afco mailed to Evanston a "Notice of Cancellation" which said that because the bank did not honor Evanston's last loan repayment check, Evanston had defaulted on the loan and, therefore, Afco would cancel the insurance on September 24, 1985. When he received the notice of cancellation, the president of Evanston immediately called Afco, and Afco told him it would not cancel the policy for another 10 days. Within that time Evanston mailed payment to Afco; however, on September 30, 1985, Mission received a notice of cancellation from Afco.

When Afco received Evanston's check, it sent Mission a request for reinstatement of Evanston's insurance, and it sent a copy to Evanston. The request states:

"TO THE INSURED:

The policies listed above are cancelled and are not in force until the insurance company advises you to the contrary. If you are not advised promptly, contact your insurance agent. If your insurance coverage is not reinstated, all payments made following cancellation will be credited to your account. The fact that you continue to make payments to Afco does not mean your insurance is in force. Only the insurance companies or your agent can advise you as to the status of your insurance coverage." (Emphasis omitted.)

Mission did not respond to the request for reinstatement.

On October 16, 1985, a fire destroyed Evanston's building. Evanston filed a proof of loss with Mission, and Mission sued for a judgment declaring that it had no liability because it cancelled the policy before the fire. While the suit was pending, California courts ordered Mission liquidated, and the trial court here permitted the Illinois Insurance Guaranty Fund (the Fund) to substitute for the defunct Mission as plaintiff in this suit. The trial court granted the Fund's motion for summary judgment and Evanston appeals.

■ Evanston contends that Mission could not effectively cancel the policy because Afco failed to give Evanston the notice required by the statutes then in effect. Section 521 of the Illinois Insurance Code provided:

> "When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this Section.
>
> (1) Not less than 10 days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10 day period." (Ill. Rev. Stat. 1985, ch. 73, par. 1065.68 (now 215 ILCS 5/513a11 (West 1992)).)

The notice of cancellation mailed on September 19, 1985, cannot qualify as the notice of intent to cancel required by statute, in part because Afco sent the notice of cancellation only five days before the stated cancellation date. Evanston contends that under the statute the insurance must remain in effect because in the absence of required notice the policy "shall not be cancelled." Ill. Rev. Stat. 1985, ch. 73, par. 1065.68.

In *Haft v. Charter Oak Fire Insurance Co.* (1994), 262 Ill. App. 3d 933, 635 N.E.2d 843, the appellate court rejected the statutory interpretation Evanston proposes here. Unigard, a premium finance company, failed to send the required notice of intent to cancel before sending a notice of cancellation to the insurance company. Haft, the insured, sued Unigard and the trial court entered judgment against Unigard for the coverage stated in the insurance policy less the amount Haft received in settlement with other defendants. In affirming the judgment, the appellate court said:

> "Unigard reasons that if section 521 was violated then the policy was never cancelled and Haft must seek recovery from the insurer.

With this interpretation Unigard attempts to impose a duty on the insurer the legislature did not intend. The statute states that the insurance policy 'shall not be cancelled' by the premium finance company unless it follows certain requirements. (Ill. Rev. Stat. 1983, ch. 73, par. 1065.68.) Had the legislature intended a violation of section 521 to block cancellation of the policy, then it could have so stated. It could have used the same language of section 143.14, which requires the insurer to send notice of cancellation to the named insured. If an insurer violates this section the result is that '[n]o notice of cancellation of any policy of insurance *** shall be effective.' (Emphasis added.) Ill. Rev. Stat. 1983, ch. 73, par. 755.14.

Unigard caused the policy to be cancelled when it sent the request to cancel to the insurer. The insurer cancelled the policy, according to statutory provisions. Section 521 imposes duties on premium finance companies." (*Haft*, 262 Ill. App. 3d at 937-38.) Because Unigard violated those duties, the court held that it was liable for the loss of insurance.

A Federal court interpreting section 521 of the Insurance Code reached the same conclusion. In *Universal Fire & Casualty Insurance Co. v. Jabin* (7th Cir. 1994), 16 F.3d 1465, the court concluded that section 521 "confers upon the insured a cause of action against the premium finance company for any cancellation it effectuates in breach of the Act's notice requirements." (*Jabin*, 16 F.3d at 1468.) Section 521 cannot help an insured state a cause of action against an insurer, since the section addresses the duties of only premium finance companies. The court reasoned:

"If we were to hold that insurers *** could not effectively cancel their policies due to the finance company's violation of the Act, then we would charge insurers with bearing the burden of the finance company's duty to notify. *** We refuse to read the premium financing statute as making insurers responsible for the wrongdoing of premium finance companies." *Jabin*, 16 F.3d at 1469.

■ Cases from other jurisdictions which Evanston cites to the contrary show that the statutory interpretation Evanston proposes would, in fact, leave the insurer solely liable. In *Carroll v. State Farm Mutual Automobile Insurance Co.* (La. Ct. App. 1982), 419 So. 2d 57, the trial court allowed the insured to recover from the insurer because the premium finance company failed to mail the requisite notice of intent to cancel. The trial court also granted the insurer full indemnity from the premium finance company. On appeal the court affirmed the insured's recovery but limited the insurer's recovery to premiums it had refunded, because that was the total of

its detrimental reliance. (*Carroll*, 419 So. 2d at 59.) Thus, because the premium finance company failed to comply with its statutory duties, the insurer was fully liable on an insurance contract it cancelled at the premium finance company's request.

We agree with *Haft* and *Jabin*. Afco's alleged violation of its statutory duties did not negate its contractual power of attorney or render Mission's cancellation of the policy ineffective.

Evanston argues that the cancellation must be ineffective because Evanston cured the default within 10 days. When an insured cures a default on a premium finance agreement, the insurance "shall not be cancelled by the premium finance company." (Ill. Rev. Stat. 1985, ch. 73, par. 1065.68.) The Insurance Code imposes no such duty on the insurance company. Again, Evanston has alleged only that Afco breached a statutory duty by exercising its power to cancel the insurance even though Evanston cured the default. This argument does not present grounds for finding Mission liable.

■ Finally, Evanston claims that because Mission failed to respond when Afco requested reinstatement of Evanston's insurance, Mission should be estopped from denying coverage.

> "Estoppel implies the prejudicial reliance of the insured upon some act, conduct or nonaction of the insure[r]. *** [T]o establish an estoppel the insured must show that it was in some manner misled by the acts or statements of the insurer or its agents [citations]; that the insured relied on this conduct or representation [citations]; that such reliance was reasonable [citations]; and that the insured was prejudiced thereby." *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05, 393 N.E.2d 1223.

Here the request for reinstatement specifically reminded Evanston that only the insurer could reinstate the policy, and until the insurer specifically told Evanston it reinstated the policy, it was not in force. Therefore, Evanston could not reasonably rely on Mission's inaction as indicating reinstatement of the policies. Since Afco was not Mission's agent (see *Budget Premium Co. v. Inter-Insurance Exchange of Lake States* (1965), 55 Ill. App. 2d 277, 204 N.E.2d 310), any statements its employees made to Evanston concerning reinstatement cannot be attributed to Mission, and reliance on Afco's acts, no matter how reasonable, cannot be grounds for estopping Mission.

Afco, exercising its authority as Evanston's attorney-in-fact, cancelled Evanston's insurance. Even if Afco acted wrongfully, in violation of its statutory duties, Mission properly relied on Afco's authority and cancelled the contract. Mission had not reinstated the coverage by the time of the fire. Since no policy covered the loss, and

Evanston presents no basis for estopping Mission from denying coverage, the trial court correctly granted summary judgment declaring that Mission's successor in interest, the Fund, had no liability to Evanston for the loss.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.