516 So.2d 1202 (1987)
Chester B. HEMPERLY, et ux, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY COMPANY, et al, Defendant-Appellee.
No. 19139-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
*1203 Jim W. Wiley, Winnfield, for plaintiff-appellant.
Cook, Yancy, King & Galloway by Sidney E. Cook, Jr., Shreveport, for defendant-appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Plaintiffs, Chester and Billie Hemperly, the owners of a 1983 Buick involved in an automobile accident, appeal a judgment rejecting their demands against the defendant, Aetna Casualty and Surety Company, based upon a determination the Buick was not covered by automobile insurance. The trial court held the policy which provided collision and medical payment coverage had been cancelled by the insurer prior to the date of the accident. We affirm.
On July 21, 1984, Billie Hemperly, while driving the Buick, was involved in an accident. Repair work on the Hemperly's damaged Buick cost approximately $4,422.09 and Mrs. Hemperly incurred medical expenses totaling $715.67. The plaintiffs sought to recover these expenses from an automobile policy issued by Aetna to the Hemperlys through the Crick Insurance Agency of Winnfield, Louisiana. Aetna denied coverage and the plaintiffs instituted suit against Aetna and Crick Insurance Agency.
During the trial, the Crick Insurance Agency was granted a motion for involuntary dismissal. The remaining defendant, Aetna, defended the suit on the basis the policy was ineffective on the day of the accident resulting from a cancellation by the insurer which had occurred six days earlier on July 15, 1984. The plaintiffs dispute Aetna's position, arguing they never received a notice of cancellation pursuant to LSA-R.S. 22:636.1 and, therefore, the policy was still in force on the day of the accident.
The trial court found the policy to have been cancelled on July 15, 1984. The trial court found Aetna to have sufficiently established notice of cancellation was mailed *1204 to the Hemperlys on June 19, 1984 and Aetna had complied with the requirements for cancellation of the policy.
LSA-R.S. 22:636.1 provides the procedures for nonrenewal and cancellation of an automobile insurance policy by the insurer. Subsection D provides, in part, "no notice of cancellation ... shall be effective unless mailed or delivered by the insurer to the insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given." Further, Subsection F provides: "Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice." Proof of mailing notice of cancellation to the named insured at the address shown on the policy shall be sufficient proof of notice. Proof of receipt of that notice is not required. Dufrene v. Dixie Auto Ins. Co., 376 So.2d 507 (La.App. 4th Cir.1979), writ den., 378 So.2d 1390 (La. 1980).
"Mailed to the insured," as contemplated in LSA-R.S. 22:636.1, connotes the completed process of transmission of notice through the mails rather than merely a depositing of notice in the mails. Proof of mailing establishes a rebuttable presumption of delivery; the presumption can be rebutted by affirmative proof of nondelivery. Norred v. Employer's Fire Insurance Co., 460 So.2d 1147 (La.App.2d Cir. 1984); see also Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La. 1973); Aultman v. Rinicker, 416 So.2d 641 (La.App.2d Cir.1982).
The burden of proof first rests upon the insurer to prove by prima facie evidence proof of mailing of notice to the insured. Where the insurer meets this burden of proof, a presumption of delivery is established which may then be rebutted by the insured by proof of nondelivery. The insured has the burden of proof to establish the nondelivery. Aultman v. Rinicker, supra.
The trial court found the insurer Aetna to have proved the mailing of the notice of cancellation to the plaintiffs. The trial court further found plaintiffs did not successfully rebut the presumption of delivery by mere denial of receipt of the notice of cancellation absent any other evidence.
The plaintiffs argue the trial judge erred in two respects:
(1) The trial court erred in determining the insurer Aetna established a prima facie case of mailing; and
(2) The trial court erred in stating the denial of receipt of notice did not shift the burden back to the insurer to prove the cancellation notice was actually received by the insured.
For the following reasons we find both specifications without merit.
The record supports the trial court's determination the insurer Aetna mailed the notice of cancellation to the Hemperlys. Mr. Ralph Potter, employed by Aetna in billing and payment operations, testified as to the verification procedures used to ensure mailing of the notice of cancellation to the insured. Mr. Potter testified he substantiated the June mailing of cancellation notice to the Hemperlys by first running a "policy inquiry" into the policy history and secondly by checking Aetna's notice of certificate of mailing for the particular day the notice was mailed to verify that the Hemperly's notice was included. Mr. Potter testified both checks indicated the notice was mailed to the Hemperlys at their home address on June 19, 1984. Aetna also produced as corroboration of its computer records a U.S. Postal Service receipt of bulk mailing dated June 19, 1984. Mr. Potter further testified Aetna's records indicated the notice was not returned to the company.
We note the testimony of Mr. Potter is based upon Aetna's computer records and print-outs. The computer print-outs were properly admitted into evidence under the business records exception to the hearsay rule. State v. Hodgeson, 305 So.2d 421 (La.1975).
*1205 We conclude, as did the trial judge in written reasons, the testimony of Mr. Potter effectively proved mailing establishing a presumption of delivery and we find no error in the trial court's ruling on this issue.
Plaintiffs argue the mere denial of the receipt of notice shifts the burden of proof back to the insurer at which time the insurer must then further prove the insured actually received the notice. This is an incorrect statement of the law because plaintiffs' mere denial of receipt of notice does not automatically rebut the presumption of delivery. The presumption can be rebutted by proof of nondelivery which is a factual determination to be made by the trial judge.
The sole evidence of nondelivery was the plaintiffs' denial of receipt of the notice. Mrs. Hemperly testified either she or her husband picked up the mail on a daily basis. Mrs. Hemperly stated she had never seen a notice of cancellation.
Mr. Hemperly corroborated his wife's testimony, stating he had not received a notice of cancellation from Aetna. Mr. Hemperly did admit to receiving previous correspondence from Aetna at their present address over a span of twenty years.
At trial Mrs. Hemperly admitted receiving the first premium notice but denied receiving the second premium notice of May 16; however, when confronted with her deposition where she admitted its receipt she acknowledged under cross-examination that she had received the second premium notice.
While Mrs. Hemperly denied receiving the cancellation notice she admitted receiving notice that the balance due after her $193.00 payment was $296.00. The only Aetna correspondence containing this balance was the cancellation notice mailed June 19.[1]
Mrs. Hemperly's testimony that she received the policy, the first premium notice, the second premium notice, and a notice reflecting the balance as $296.00 which information was only contained in the cancellation notice provides a sound basis for the trial court to make a credibility call against her and reject her testimony that she had not received the cancellation notice.
Finally, we address plaintiffs' argument in brief that Mrs. Hemperly's payment of $193.00 received by Aetna on May 30, 1984 in fact renewed the policy and extended its life beyond the date of the accident.
The plaintiffs admit receiving a notice of premium due mailed to their home address on April 12, 1984. This notice stated a premium due in the amount of $193.00 on or before May 5, 1984. The plaintiffs made no payment on or before May 5, 1984.
Aetna mailed a second notice of premium due to the plaintiffs on May 16, 1984, which stated the policy had expired on May 5, 1984 for nonpayment but would be reinstated with no gap in coverage should a minimum payment of $294.00 be received by June 5, 1984.
On May 30, 1984, Aetna received a payment of $193.00 which had been sent by Mrs. Hemperly. No further payment was received on or before June 5, 1984, and because the amount paid was less than the minimum amount due Aetna mailed the June 19, 1984 notice of cancellation which is the center of controversy in this case.
Plaintiffs argue the payment of $193.00 constituted 40% of the premium of $481.00 due for the six month policy and Aetna's acceptance of the payment renewed the policy, placed the plaintiffs on Aetna's installment plan, entitling the plaintiffs to coverage beyond the date the policy was in fact cancelled by Aetna. Aetna's installment plan for a six month policy requires four installments to be paid, the initial installment to be a down payment of 40% of the entire amount due and the second, *1206 third, and fourth monthly installments to be paid in increments of 20% each. This installment plan was detailed on Aetna's initial bill of April 12.
A review of the record indicates the plaintiffs were not entitled to rely on the installment plan as a 40% down payment due May 5 was not timely made nor was the 20% installment due June 5 paid. As previously noted, the first notice of premium due required a payment of $193.00 on or before May 5, 1984 and the second notice of premium due required a minimum payment of $294.00 on or before June 5, 1984 which was 60% of the premium and included in addition to the initial 40% installment the first 20% installment which was due June 5.
The plaintiffs failed to comply with either notice of premium due. No amount was paid on or before May 5 and the payment of $193.00 received by Aetna on May 30, 1984 was $101.00 short of the minimum amount required by the second notice of premium due.
Mr. Ralph Potter stated at trial the plaintiffs were never qualified to be placed on the installment plan as the 40% down payment was not timely made. When questioned why Aetna had nonetheless accepted the inadequate payment and not returned the $193.00 to the plaintiffs, Mr. Potter stated Aetna's practice required acceptance of any partial payment made before the due date as time remained for the further payment to be made. Accordingly Aetna accepted the $193.00 as partial payment made of the May 16 premium notice with time remaining before June 5 for the balance of $294.00 to be paid. This $193.00 accepted by Aetna provided payment for coverage through July 15, the date of cancellation as reflected upon the cancellation notice. The plaintiffs seem to contend the $193.00 payment of 40% of the premium should have provided them coverage beyond the July 15 cancellation date shown in the cancellation notice of June 19. We note that 40% of the six month policy would be 2.4 months or two months and twelve days which would provide coverage from May 5 to July 17 which still would have resulted in no coverage on the July 21 accident date. This contention has no merit.
Aetna was fully justified in cancelling the policy because of the plaintiffs' failure to pay the premiums either in full on the date of receipt of the initial April 12 notice nor pursuant to the terms of the installment plan reflected in the notices of April 12, May 16, and the cancellation notice of June 19.
Although not formally assigned as error, appellants contend in brief had the disputed notice been received it is ineffective by virtue of ambiguous language contained in the notice, in contravention of the form and content requirements of LSA-R.S. 22:636.1.
A demand for payment of balance due rather than an unequivocal notice of cancellation is insufficient to serve as a notice of cancellation. Ellzey v. Hardware Mutual Insurance Company of Minnesota, 40 So.2d 24 (La.App. 1st Cir.1949). A notice of intent to cancel is nothing more than a demand for payment whereas a notice of cancellation puts an insured on notice that the policy will be cancelled. Dairyland Insurance Company v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985). Notice of intent to cancel for nonpayment is not the same as the notice of cancellation for nonpayment of a premium statutorily required under LSA-R.S. 22:636.1. Carroll v. State Farm Mutual Automobile Insurance Company, 419 So.2d 57 (La. App.2d Cir.1982).
An examination of the notice reveals the notice is clear, unequivocal and unambiguous. See Alexander v. State Farm Mutual Automobile Insurance Company, 148 So.2d 898 (La.App. 1st Cir. 1962) (on rehearing). Across the top of the notice in large capital letters is printed, "NOTICE OF CANCELLATION" underneath which the notice states, "Cancellation Effective Date 7/15/84, 12:01 A.M. Standard Time." The notice further reads, "We are sending this Notice of Cancellation for non-payment because we have not received your last payment. Perhaps you overlooked your previous bill or sent less than the minimum due. If so, there is still time *1207 to prevent cancellation of your policy. If we receive a payment of $96.19, which was due 6/05/84, on or before the cancellation effective date shown above, your policy will be continued in force with no lapse in coverage." At the bottom of the notice is printed the words "PREMIUM NOTICE" underneath which is listed further instructions should the insured elect to prevent cancellation of the policy.
The Fourth Circuit recently held language similar to that contained in the Aetna notice sufficient to put the insured upon notice of impending cancellation of the policy. Rachuba v. Hickerson, 503 So.2d 570 (La.App. 4th Cir.1987). In Rachuba, the notice read: "The insurance afforded will stop on the date and time stated above" and further stated "Urgent: If you desire to continue your insurance protection, return this part of the notice with your payment for the amount shown as past due. It must reach us prior to the date shown below." The court held this language to comply with LSA-R.S. 22:636.1 in form and content.
We conclude language providing the insured with the opportunity to prevent cancellation of his policy does not constitute either a mere demand for payment or a notice of intent to cancel where the notice includes clear and unequivocal language giving notice to the insured that the policy has been cancelled effective on the cancellation date set forth in the notice. In this case, the notice imparted the date and time the policy had been cancelled as evidenced by the language quoted above. There is no sound reason why the insured should be denied the opportunity to avoid a clear, unambiguous cancellation date by payment of the delinquent premium before the date of cancellation and be advised of the existence of this opportunity in the notice of cancellation. The statute specifically provides that he be given ten days advance notice of the cancellation in order that he might have the opportunity to provide himself with coverage. There can be no easier method to accomplish the acquisition of coverage during the delay required by statute than by making payment of the past due premium. This contention is without merit.
For the reasons expressed, we affirm the judgment of the trial court at plaintiffs-appellants costs.
AFFIRMED.
NOTES
[1] Mrs. Hemperly's testimony on cross:

Q. But you did have some correspondence from Aetna indicating that a payment of $296.00 was due?
A. Premium notice, yes.